BEFORE THE SECOND DIVISION, AUGUST 9, 1960

No. 64440.—Engis Equipment Company *v.* United States, protest 58/4905–9803 (Chicago).

`LAWRENCE, Judge: An importation described on the invoices as "1 Pick-up and Control Unit for Talyrond" and "1 Amplifier for Talyrond" was classified

by the collector of customs as "Lab. insts., nspf—other," and duty was imposed thereon at the rate of 27 per centum ad valorem pursuant to the provisions of paragraph 360 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 360), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108.

Plaintiff contends that said articles are not laboratory or scientific instruments within the meaning of said paragraph 360 and should be classified as "machines having essential electrical features," in paragraph 353 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and subjected to duty at the rate of 13¾ per centum ad valorem.

The pertinent text of the statutes above referred to follows—

Paragraph 360, as modified, *supra*:

Scientific and laboratory instruments, apparatus, utensils, appliances (including mathematical instruments but not including surveying instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for:

\*      \*      \*      \*      \*      \*      \*

Other \* \* \*_____ 27% ad val.

Paragraph 353, as modified, *supra*:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\*      \*      \*      \*      \*      \*      \*

Other \* \* \*_____ 13¾% ad val.

Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part (not including X-ray tubes or parts thereof) | The same rate of duty as the articles of which they are parts.

The only witness in the case, Joseph S. Einstein, was called by plaintiff. He testified, in substance, that he is sales and service engineer for the plaintiff and had sold 6 and serviced 8 Talyrond machines during the 1-year period, beginning December 1, 1957, and installed the instant importations. He produced a pamphlet and a photograph, which were received in evidence as illustrative exhibits 1 and 2, respectively, which depict the Talyrond machine.

The machine is used to measure the roundness of shafts or balls, "or outside diameters of nominally round parts." The part to be measured is centered beneath the spindle of the Talyrond so that a stylus, which depends from the pickup, can touch the part to be measured. An impulse is transmitted from every movement of the stylus through the pickup, to the amplifier "where it's built up into a usable signal." The signal operates a recorder "which gives a polar chart of the roundness of the piece under examination, in comparison to the spindle in the Talyrond machine." The electrical equipment of the machine consists of the pickup, the amplifier, the filters, the recorder, and the motors. The machine cannot be operated by any other power. The articles in controversy are essential in the operation of the Talyrond and have no other use.

The machines of which the imported articles are parts are sold to ball and roller bearing manufacturers, pump and pump part or valve part manufacturers, and seal or shaft manufacturers and are employed either as "an adjunct to the grinding department or an adjunct to the polishing department," being the end machines in the process of production. They are not used in laboratories.

In *W. L. Conover* v. *United States*, 17 C.C.P.A. (Customs) 324, T.D. 43743, the court determined the term "scientific," as it appears in paragraph 360, *supra*, as follows:

* * * We are of opinion, therefore, that the term "scientific," in paragraph 360, was intended by the Congress to be limited, except as otherwise specially provided therein, to instruments, apparatus, utensils, and appliances *used in pure, as distinguished from applied, science.* * * * [Emphasis added.]

In other cases, *United States* v. *Adlanco Industrial Products Corp.*, 21 C.C.P.A. (Customs) 249, T.D. 46778, and *Arthur H. Thomas Co.* v. *United States*, 72 Treas. Dec. 203, T.D. 49102, the court stated that the test for determining whether, in a tariff sense, an article is a laboratory instrument depends upon whether or not it is chiefly used in a laboratory.

The record establishes that the subject merchandise is not used in laboratories, neither is it "scientific" within the meaning of said paragraph 360, *supra*; and, since the machine with which the imported articles are used has as an essential feature an electrical element, without which it could not successfully operate, it responds to the terms of paragraph 353, *supra*.

At the conclusion of the trial, counsel for the Government, with commendable candor, stated "I think the plaintiff has established definitely a *prima facie* case." In our opinion, the record clearly justifies that concession.

Upon the record and for the reasons above expressed, we find and hold that the articles here in controversy are properly classifiable under paragraph 353, *supra*, as parts of articles having as an essential feature an electrical element or device and properly dutiable at the rate of 13¾ per centum ad valorem, as claimed by the importer.

That claim in the protest is sustained, and judgment will issue directing the collector to reliquidate the entry accordingly.